## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                    CRIMINAL ACTION

VERSUS                                              No. 15-10

GROSS WILLIAMS                                    SECTION I

### ORDER & REASONS

Before the Court is petitioner Gross Williams's ("Williams") motion[1] to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. The government opposes the motion,[2] and Williams filed a reply.[3]  For the following reasons, the motion is denied.

### I.

On January 22, 2015, Williams was charged with counts one through four of a five-count indictment.[4]  On May 18, 2016, before then U.S. District Judge Kurt D. Engelhardt, Williams pled guilty to count one, which charged Williams with conspiring to possess with the intent to distribute and to distribute one kilogram or more of a mixture or substance containing a detectable amount of heroin and five kilograms or more of a mixture or substance containing a detectable amount of

---

[1] R. Doc. No. 197.
[2] R. Doc. No. 204.
[3] R. Doc. No. 209.
[4] R. Doc. No. 1.

cocaine.[5]   Williams also pled guilty to count three, which charged Williams with possession of a firearm by a convicted felon.[6]

Pursuant to Williams's plea agreement, Williams also pled guilty to a bill of information, filed pursuant to 21 U.S.C. § 851(a)(1), which increased Williams's mandatory minimum sentence to twenty years.[7]   If Williams complied with the terms of the plea agreement, the government agreed not to file a second bill of information, which would mandate a life sentence upon conviction.[8]   Williams waived his right to appeal or contest his guilty plea, conviction, and sentence as well as his right to bring any collateral challenges, including challenges pursuant to § 2255, except claims of ineffective assistance of counsel in "an appropriate proceeding."[9]   However, Williams entered a conditional plea that specifically reserved his right to appeal Judge Engelhardt's adverse ruling with respect to Williams's motion to suppress.[10]

---

[5] R. Doc. No. 127, at 1.

[6] *Id.* Williams's wife and co-defendant, Kathleen Williams pled guilty to count five of the indictment at the same rearraignment proceeding. R. Doc. No. 122.

[7] R. Doc. No. 127, at 2; *see* R. Doc. No. 116. Pursuant to 21 U.S.C. § 851(a)(1):

> [n]o person who stands convicted of an offense under this part shall be sentenced to increased punishment by reason of one or more prior convictions, unless before trial, or before entry of a plea of guilty, the United States attorney files an information with the court (and serves a copy of such information on the person or counsel for the person) stating in writing the previous convictions to be relied upon.

[8] R. Doc. No. 127, at 2.

[9] *Id.* at 3.

[10] *Id.* The plea agreement provided that if the U.S. Fifth Circuit Court of Appeals reversed the Court's ruling on the motion to suppress, Williams had the right to withdraw his plea of guilty. R. Doc. No. 127, at 1.

On March 15, 2017, Judge Engelhardt sentenced Williams to a term of imprisonment of 276 months as to count one and 120 months as to count three, with the terms of imprisonment to run concurrently.[11]  Williams timely appealed his sentence and conviction.[12]  On February 15, 2018, the U.S. Fifth Circuit Court of Appeals affirmed Judge Engelhardt's ruling on the motion to suppress.[13]  On May 29, 2018, the United States Supreme Court denied Williams's petition for a writ of certiorari.[14]  Williams timely filed the present motion.[15]

## II.

Section 2255 allows a prisoner in federal custody to bring a motion to vacate, set aside, or correct his sentence in the court that imposed the sentence, when that prisoner claims a

> right to be released upon a ground that the sentence was imposed in violation of the constitution or laws of the United States, or that the court was without the jurisdiction to impose such a sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack.

28 U.S.C. § 2255(a).  When a defendant challenges his conviction and sentence collaterally under § 2255, the defendant can only bring "issues of constitutional or jurisdictional magnitude." *United States v. Shaid*, 937 F.2d 228, 231–32 (5th Cir. 1991) (citing *Hill v. United States*, 368 U.S. 424, 428 (1962)); *see also United States v.*

---

[11] R. Doc. No. 177, at 2.
[12] R. Doc. No. 173. *See also* Fed. R. App. P. 4(b)(1)(A).
[13] R. Doc. No. 194.
[14] R. Doc. No. 195.
[15] R. Doc. Nos. 197, 200.  The government does not dispute the timeliness of Williams's motion.

*Williamson*, 183 F.3d 458, 462 (5th Cir. 1999) ("Section 2255 motions may raise only constitutional errors and other injuries that could not have been addressed on direct appeal that will result in a miscarriage of justice if left unaddressed.").

Williams asserts sixteen grounds for relief.[16] Specifically, he asserts sixteen claims of ineffective assistance of counsel against three attorneys: Eddie Jordan, Jr. ("Jordan") (grounds 1–10 and 15–16); Jerrod Thompson-Hicks ("Thompson-Hicks") (grounds 11–12); and Ada Phleger ("Phleger") (grounds 13–14). Jordan represented Williams from his initial appearance through the plea proceedings.[17] Thompson-Hicks was thereafter appointed to represent Williams, and he represented Williams in connection with sentencing proceedings.[18] Phleger represented Williams in connection with his appeal to the Fifth Circuit.[19] The Court will address each of Williams's claims of ineffective assistance of counsel in turn.[20]

---

[16] *See generally* R. Doc. No. 197.

[17] *See* R. Doc. Nos. 6, 122. The record reflects that Williams initially retained Jordan as his attorney. When Williams could no longer afford an attorney, Jordan withdrew as counsel but was then appointed by the Federal Public Defender to represent Williams. R. Doc. Nos. 54, 57, 61–65. Jordan later withdrew as counsel after Williams entered his guilty plea. R. Doc. Nos. 136, 137.

[18] R. Doc. Nos. 138, 142.

[19] R. Doc. Nos. 182, 183, 192.

[20] The government argues that Williams waived his right to file the present motion. R. Doc. No. 204, at 4. As part of his plea agreement, Williams waived his right generally, with certain exceptions, to urge a collateral challenge of his conviction and sentence.

> [T]he defendant, in exchange for promise(s) and agreement(s) made by the United States in this plea agreement, knowingly and voluntarily . . . [w]aives and gives up any right to challenge his sentence collaterally, including but not limited to any and all rights which arise under Title 28, United States Code, **Sections 2255** and 2241, Rule 60 of the Federal Rules of Civil Procedure, Rule

# III.

Claims of ineffective assistance of counsel are governed by the standard established in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland*'s two-part test requires a petitioner to prove both deficient performance and resulting prejudice. *Id.* at 687. The petitioner must satisfy both prongs of the *Strickland* test in order to be successful in an ineffective assistance claim. *See id.* A court is not required to address these prongs in any particular order. *Id.* at 697. If it is possible to dispose of an ineffective assistance of counsel claim without addressing both prongs, "that course should be followed." *Id.*

Deficient performance is established by "show[ing] that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. In applying this standard, a "court must indulge a 'strong presumption' that counsel's conduct falls within the wide range of reasonable professional assistance because it is all too easy to conclude that a particular act or omission of counsel was

---

36 of the Federal Rules of Criminal Procedure, writs of *coram nobis* and *audita querla*, and any other collateral challenges to his sentence of any kind.[20]

R. Doc. No. 127, at 3 (emphasis added). Williams, however, did not waive claims of ineffective assistance of counsel. *Id.* at 4.

The government argues, without citing any legal authority, that Williams has "transform[ed] that waived challenge into a non-waived ineffective assistance of counsel claim by arguing that the alleged error exists and his attorney's failure to object to it was ineffective."[20] Even if Williams waived his right generally to challenge his conviction and sentence in a motion brought pursuant to § 2255, the Court nevertheless addresses each of his non-waived claims of ineffective assistance of counsel.

unreasonable in the harsh light of hindsight." *Bell v. Cone*, 535 U.S. 685, 702 (2002) (quoting *Strickland*, 466 U.S. at 689). In other words, "judicial scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689.

A showing of prejudice requires "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. With respect to guilty pleas, the prejudice requirement "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Thus, in challenging a guilty plea on grounds of ineffective assistance, a petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *King v. Davis*, 898 F.3d 600, 605 (5th Cir. 2018) (quoting *Hill*, 474 U.S. at 59). The defendant must also show "that going to trial would have given him a reasonable chance of obtaining a more favorable result." *King*, 898 F.3d at 605 (citing *United States v. Shepherd*, 880 F.3d 734, 743 (5th Cir. 2018)).

At the outset, the government argues that Williams cannot succeed as to any of his ineffective assistance of counsel claims because he cannot demonstrate prejudice.[21] Specifically, the government argues that Williams cannot show that going to trial would have given him a reasonable chance of obtaining a more favorable result.

---

[21] R. Doc. No. 204, at 5–8.

As previously stated, in exchange for Williams's guilty plea, the government agreed not to file a second bill of information, which would have resulted in Williams receiving a mandatory life sentence.[22] The government also agreed to dismiss counts two and four; count two charged Williams with possession of a firearm in furtherance of a drug trafficking crime, which the government contends would have carried a mandatory consecutive term of 60 months of imprisonment up to life imprisonment,[23] and count four charged Williams with conspiring to launder the proceeds of unlawful activity, namely narcotics distribution.[24]

At Williams's rearraignment, the Court explained to Williams that he was facing a mandatory minimum sentence by pleading guilty and it explained the maximum sentences that he faced:

> **THE COURT**: Mr. Williams, if you're convicted of the crime charged in Count 1, either upon a plea of guilty or after a trial, the statutory sentence that could be imposed on you is a maximum term of imprisonment of life and a minimum term of imprisonment, pursuant to the statute, of 20 years.
>
> . . .
>
> If you're convicted of the crime charged in Count 3, either upon a plea of guilty or after trial, then the statutory sentence that could be imposed on you is a maximum term of imprisonment of 10 years.
>
> . . .
>
> Mr. Williams, do you understand the maximum sentences that can be imposed on you relative to Counts 1 and 3?

---

[22] *Id.* at 6; R. Doc. No. 127, at 2.

[23] R. Doc. No. 204, at 6; R. Doc. No. 127, at 1.

[24] R. Doc. No. 1, at 2–3.

**WILLIAMS**: Yes, sir.

**THE COURT**: You understand the minimum sentence that must be imposed on you relative to Count 1?

**WILLIAMS**: Yes, sir.[25]

Based on the foregoing, the government argues that Williams knew he was going to receive a sentence of at least 240 months in prison.[26] Williams was then sentenced to a term of 276 months, which is 36 months above the mandatory minimum sentence as to count one.[27]

The government argues that the "modest difference" between the minimum possible sentence that Williams knew he would receive and the sentence that he actually received, as well as the fact that he did not face a mandatory life sentence, makes Williams's contentions that he would not have pled guilty but for his counsel's alleged errors "unconvincing."[28]

### A.

In his first ineffective assistance of counsel claim, Williams asserts that his counsel failed to object to the Court's failure to advise him of the nature of the offense to which he was pleading guilty as required by Rule 11(b)(1) of the Federal Rules of

---

[25] R. Doc. No. 164, at 31–32.
[26] R. Doc. No. 204, at 6.
[27] R. Doc. No. 177, at 2.
[28] R. Doc. No. 204, at 6. The government states that Williams received a sentence of 267 months, but the judgment shows the sentence imposed was 276 months. Therefore, the sentence that Williams received was 36 months over the mandatory minimum rather than 27 months, as stated by the government.

Criminal Procedure.[29]  Specifically, Williams argues that the Court should have advised him—and that he would not have pled guilty if he knew—that he would be held accountable for 150 grams of cocaine base and 2.49 kilograms of marijuana as described in his presentence investigation report ("PSR"),[30] in addition to the quantities of heroin and cocaine described in the indictment.[31]

As explained above, Williams must show that Jordan's performance was deficient and that such performance caused Williams prejudice. With respect to the first *Strickland* prong, the Court complied with Rule 11 at Williams's rearraignment and, therefore, Williams's counsel was not ineffective for failing to object to the Court's alleged failure to comply with Rule 11(b)(1).

Rule 11(b)(1) provides:

> Before the Court accepts a plea of guilty or nolo contendere, the defendant may be placed under oath, and the court must address the defendant personally in open court. During this address, the court must inform the defendant of, and determine that the defendant understands, the following:
>
> . . .
>
> (G) the nature of the offense to which the defendant is pleading.

The Court explained the elements of each offense for which Williams was charged in the indictment:

> **THE COURT**: . . . I am going to go through the counts that are pertinent to today.

---

[29] R. Doc. No. 197, at 4.

[30] R. Doc. No. 151, at 6.

[31] R. Doc. No. 1, at 1.

Mr. Williams, I've been advised that, subject to your reservation of your right to appeal the Court's determination of the previously filed motion to suppress . . . pursuant to Rule 11(a)(2) of the Federal Rules of Criminal Procedure, you're here today with that reservation, to plead guilty to Counts 1 and 3 of the indictment which charged, in Count 1, that you, from a time unknown and continuing until on or about September 22 of 2014, did knowingly and intentionally conspire with persons known and unknown to the grand jury to distribute and possess with the intent to distribute 1 kilogram or more of heroin and to distribute and possess with the intent to distribute 5 kilograms or more of cocaine in violation of Sections 841(a)(1) and 841(b)(1)(A) of Title 21 of the United States Code; and, in Count 3, that you, on or about September 22 of 2014, having been previously convicted of a crime punishable by more than one year of imprisonment, specifically a December 20, 2012[ ] conviction in . . . the 18th District Court for the Parish of Iberville, State of Louisiana, Case No. 672-11D . . . for possession with the intent to distribute a Schedule I controlled dangerous substance in violation of Louisiana Revised Statute Title 14, Section 966(a), did knowingly possess in and affecting commerce a firearm, specifically a Smith & Wesson .40-caliber semiautomatic pistol bearing serial number DSS6399, all in violation of Title 19, United States Code, Section 922(g)(1).

Mr. Williams, I previously mentioned that you intend to plead guilty here subject to your reservation of your right to appeal this Court's determination of your previously filed motion to suppress, and to withdraw your guilty plea if you prevail on the appeal, pursuant to Rule 11(a)(2) of the Federal Rules of Criminal Procedure.

Mr. Williams, am I correct that you are here today to plead guilty on these two charges subject to the reservation I just mentioned?

**WILLIAMS**: Yes, sir.

**THE COURT**: All right. Mr. Williams, I also understand that you wish to plead guilty, pursuant to Section 851 of

Title 21, to Count 1 of the May 11, 2016, bill of information that serves to establish a prior felony drug conviction, specifically a September 27, 1993[ ] conviction for your possession with the intent to distribute a Schedule II controlled dangerous substance, that is cocaine, on August 31, 1992, in the 15th District Court for the Parish of Lafayette, State of Louisiana, in Case No. 64126 in violation of Louisiana Revised Statute Title 40, Section 967, after having previously been convicted on April 28th of 1992 of possession with the intent to distribute cocaine in that same court under Case No. 61689. Am I correct in this regard?

**JORDAN**: That's correct.

**WILLIAMS**: Yes, sir.

**THE COURT**: That's the bill to establish the prior conviction. We're going to make reference to that as we go through today and what the significance of that is. And I know you and your attorney have already discussed it, and you may have already discussed it with the government as well, but I am going to cover that here today.[32]

. . .

**THE COURT**: Have [ ] you discussed with your attorney the particular charges in the five-count indictment to which you intend to plead guilty?

. . .

Mr. Williams, have you discussed with Mr. Jordan Counts 1 and 3 --

**WILLIAMS**: Yes, sir.

**THE COURT**: -- prior to today. All right.

. . .

---

[32] R. Doc. No. 164, at 7–9.

As I previously stated, Mr. Williams, Count 1 of the indictment – I am going to go through each of these counts and give you the elements of each count and some definitions.

Count 1, Mr. Williams, states that you, from a time unknown and continuing until on or about September 22 of 2014, did knowingly and intentionally conspire with persons known and unknown to the grand jury to distribute and possess with the intent to distribute 1 kilogram or more of heroin and to distribute and possess with the intent to distribute 5 kilograms or more of cocaine in violation of Sections 841(a)(1) and 841(b)(1)(A) of Title 21 of the United States Code, and all in violation of Section 846 of Title 21.

For you to be found guilty of the crime charged in Count 1, the government, in the absence of a guilty plea, would have to prove the following elements beyond a reasonable doubt as to the conspiracy offense: First, that two or more persons directly or indirectly reached an agreement to violate the narcotics laws by knowingly and intentionally distributing controlled substances and by knowingly and intentionally possessing with the intent to distribute controlled substances, which in this case are heroin and cocaine, all as charged in Count 1 of the indictment. Second, that you knew of the unlawful purpose of the agreement. Third, that you joined in the agreement willfully. That is, with the intent to further its unlawful purpose. And, four, that the overall scope of the conspiracy involved at least 1 kilogram or more of heroin and 5 kilograms or more of cocaine.

Mr. Williams, you're advised that a conspiracy is an agreement between two or more persons to join together to accomplish some unlawful purpose. It is a kind of partnership in crime in which each member becomes the agent of every other member. One may become a member of a conspiracy without knowing all the details of the unlawful scheme or the identities of all the other alleged conspirators. If a defendant understands the unlawful nature of a plan or scheme and knowingly and intentionally joins in that plan or scheme on one occasion, that is sufficient to convict him or her of conspiracy even though the defendant had not participated before and even

though the defendant played only a minor part. The government need not prove that the alleged conspirators entered into any formal agreement, nor that they directly stated between themselves all the details of the scheme.

Similarly, the government need not prove that all of the details of the scheme alleged in the indictment were actually agreed upon or carried out; nor must it prove that all of the persons alleged to have been members of the conspiracy were, in fact, such, or that the alleged conspirators actually succeeded in accomplishing their unlawful objectives. Mere presence at the scene of an event, even with knowledge that a crime is being committed, or the mere fact that certain persons may have associated with each other and may have assembled together and discussed common aims and interests, does not necessarily establish proof of the existence of a conspiracy. Also, a person who has no knowledge of a conspiracy but who happens to act in a way which advanced some purpose of a conspiracy does not thereby become a conspirator.

Now, Mr. Williams, the underlying crimes of the charged conspiracy, specifically distribution and possession with the intent to distribute 1 kilogram or more of heroin and 5 kilograms or more of cocaine, have the following essential elements which the government, in the absence of a guilty plea, also would have to prove beyond a reasonable doubt. With respect to the offense of possession with the intent to distribute 1 kilogram or more of heroin or 5 or more kilograms of cocaine, the elements the government would have to prove are: One, knowing and intentional possession of a controlled substance. Second, that the substances were, in fact, heroin and cocaine. Third, possession of the substances with the intent to distribute them. And, fourth, that the quantity of the substances was at least 1 kilogram of heroin and at least 5 kilograms of cocaine. The terms "knowing" or "knowingly" mean that the act was done voluntarily an  intentionally, not because of some mistake or accident.

"Possession with the intent to distribute" simply means to possess with the intent to deliver or transfer possession of a controlled substance to another person with or without any financial interest in the transaction. "Possession," as

that term is used here, may be of two kinds, actual possession and constructive possession. A person who knowingly has direct physical control over a thing at a given time is then in actual possession of it. A person who, although not in actual possession, knowingly has both the power and the intention at a given time to exercise dominion or control over a thing, either directly or through another person or persons, is then in constructive possession of it. Possession may be sole or joint. If one person alone has actual or constructive possession of a thing, possession is sole. If two or more persons share actual or constructive possession of a thing, possession is joint. The element of possession is present if the defendant had actual or constructive possession, either alone or jointly with others.

Mr. Williams, with respect to the offense of distribution of 1 kilogram or more of heroin and 5 kilograms or more of cocaine, the elements the government would be required to prove are: First, knowing and intentional distribution of a controlled substance. Second, that the substances were, in fact, heroin and cocaine. Third, that at the time of the distribution, the defendant knew the substances were controlled substances. And, fourth, that the quantity of the substances distributed were at least 1 kilogram of heroin and 5 or more kilograms of cocaine. To distribute a controlled substance means to deliver or transfer possession of a controlled substance to another person with or without any financial interest in the transaction. The terms "knowing" or "knowingly" have the same meanings that I have just described in connection with explaining the elements of the crime of possession with the intent to distribute.

With respect to the crime with which you are charged in Count 3, that you, on or about September 22, 2014, having been previously convicted of a crime punishable by more than one year of imprisonment, specifically a December 20, 2012, conviction in the criminal district court of the 18th District Court for the Parish of Iberville, State of Louisiana, Case No. 672-11D for possession with the intent to distribute a Schedule I controlled dangerous substance in violation of 966(a) of Title 14 of the Louisiana Revised Statutes, did knowingly possess in and affecting commerce

a firearm, specifically a Smith & Wesson .40-caliber semiautomatic pistol bearing serial number DSS6399, all in violation of Title 18, United States Code, Section 922(g)(1).

The government, in the absence of a guilty plea, would have to prove the following elements of Count 3 beyond a reasonable doubt: First, that you knowingly possessed a firearm as charged. Here, that firearm is identified as being a Smith & Wesson .40-caliber semiautomatic pistol bearing serial number DSS6399. Second, that prior to the time that you possessed the firearm, you had been convicted in a court of a crime punishable by imprisonment for a term in excess of one year. In other words, a felony offense. And, third, that the possession of the firearm was in or affecting commerce. That is, prior to the time that you possessed the firearm, it had traveled at some time from one state to another. The term "firearm" means any weapon that will or is designed to or may readily be converted to expel a projectile by the action of an explosive. The term "firearm" also includes the frame or receiver of any such weapon or any firearm muffler or firearm silencer or destructive device. The terms "knowingly" and "possession" have the same meanings that I explained in connection with Count 1.

. . .

All right. Mr. Williams, do you understand the offenses with which you have been charged in Counts 1 and 3 of the indictment?

**WILLIAMS**: I don't understand one thing, Your Honor. With the gun, the interstate commerce, are they saying I brandished the gun from state to state?

**THE COURT**: No. The element that you're referring to is that the gun itself had traveled from one state to another, not that you brought it from one state to another.

**WILLIAMS**: Yes, sir. Okay.

**THE COURT**: And I think -- and Mr. Haller can correct me on this --

**[ASSISTANT U.S. ATTORNEY] HALLER**: Yes. In the factual basis --

**THE COURT**: -- firearms actually are not manufactured in Louisiana.

**HALLER**: Yes, Your Honor. And on that point, in the factual basis it states that a government expert would testify that Smith & Wesson has never manufactured .40 caliber semiautomatic pistols in Louisiana, and that the .40-caliber Smith & Wesson pistol seized from Williams'[s] bedroom had to have traveled in interstate commerce. It's not an allegation that he personally took it across state lines.

**THE COURT**: Correct. Nor does it have to be. You understand that, the gun itself had traveled across state lines into Louisiana even prior to your ownership or possession of it?

**WILLIAMS**: Yes, sir.

**THE COURT**: Any other questions that you have, Mr. Williams, about Counts 1 and 3?

**WILLIAMS**: No, sir.

**THE COURT**: Okay. You understand the elements and the definitions I gave you?

**WILLIAMS**: Yes, sir.

. . .

**THE COURT**: Mr. Williams, did you, in fact, again subject to the reservation, do the acts charged in Counts 1 and 3 of the indictment?

**WILLIAMS**: Yes, sir.[33]

---

[33] R. Doc. No. 164, at 21–30.

As to the inclusion of additional drug quantities for sentencing purposes, the Court informed Williams at the rearraignment that additional facts would be included in the PSR that the Court could not know at the time:

> **THE COURT**: [ ] Mr. Williams, have you and Mr. Jordan discussed the sentencing guidelines?
>
> **WILLIAMS**: Yes, sir.
>
> **THE COURT**: Do [ ] you understand that those guidelines are advisory and that the Court can determine that you – that your sentence will be greater or less than the guidelines if the Court determines that the guidelines don't take into account certain facts about you or about these particular offenses?
>
> . . .
>
> Mr. Williams, do you understand that?
>
> **WILLIAMS**: Yes, sir.
>
> **THE COURT**: Do [ ] you understand that in determining what your sentence will be in this case, the Court is not limited to considering only the facts set forth in the factual basis that you may have signed in connection with your decision to enter a plea of guilty here today? The Court, for instance, may also consider factual information set forth in the presentence investigation report that the probation office will prepare between now and the date of sentencing.
>
> . . .
>
> Mr. Williams, do you understand that?
>
> **WILLIAMS**: Yes, sir.[34]

---

[34] R. Doc. No. 164, at 36–37.

Williams was held responsible for additional drug quantities, as described in the factual basis,[35] as part of the conspiracy for which he was charged in the indictment. Furthermore, the inclusion of the additional drug quantities in the PSR was proper pursuant to the United States Sentencing Guidelines. § 2D1.1 cmt. n.5 ("Type and quantities of drugs not specified in the count of conviction may be considered in determining the offense level.") (citing U.S.S.G. § 1B1.3(a)(2) (relevant conduct)).

In sum, the Court informed Williams of the nature of the offenses for which he was charged, the Court described the elements of the crimes by using the language provided in the Fifth Circuit pattern jury instructions, and the Court informed Williams that additional facts may arise in the presentence investigation that could affect sentencing.

Finding that the Court complied with Rule 11(b)(1), Jordan did not render ineffective assistance of counsel by failing to object to the Court's plea colloquy as insufficient. "Counsel is not ineffective for failing to make a meritless objection." *United States v. Lutcher*, No. 03-338, 2009 WL 666767, at *3 (E.D. La. Mar. 10, 2009) (Africk, J.) (citing *Wood v. Quarterman*, 503 F.3d 408, 413 (5th Cir. 2007)). Williams's first ineffective assistance of counsel claim fails under the first prong of *Strickland*.

**B.**

Williams's second ineffective assistance of counsel claim also asserts that Jordan failed to object to the Court's alleged non-compliance with Rule 11.

---

[35] R. Doc. No. 125, at 2.

Specifically, Williams argues that the Court did not ensure that Williams understood he had the right to be represented by "new" counsel at trial and at any other type of proceeding, pursuant to Rule 11(b)(1)(D).[36] For substantially the same reasons as outlined in Section A, *supra*, Williams's claim fails.

The Court specifically informed Williams that he had the right to an attorney and, if necessary, appointed counsel at the rearraignment and every stage of the proceedings:

> **THE COURT**: . . . You are [ ] represented at this time by able counsel. . . . [Y]ou have a right to have an attorney at every stage of the proceedings. If it later appears that you are unrepresented and cannot afford it, an attorney will be appointed to represent you.[37]

In his motion and declaration, Williams argues that his relationship with Jordan was "beyond repair" and that, had Jordan or the Court informed him of his right to counsel, he "would have taken full advantage of the opportunity" and would not have pled guilty and would have proceeded to trial.[38]

Such conclusory statements are contrary to what Williams told the Court at the rearraignment proceeding. Williams was advised of his right to counsel. Williams would have this Court mandate that a defendant be advised of his right to change counsel, which is not required by Rule 11. Furthermore, after Williams was sworn, the Court questioned him about his attorney's representation:

---

[36] R. Doc. No. 197, at 6–7; 39–40.
[37] R. Doc. No. 164, at 6.
[38] R. Doc. No. 197, at 6–7, 39–40.

**THE COURT**: Okay. Mr. Williams . . . , have . . . you had [ ] ample opportunity to discuss this case with your attorney?

. . .

Mr. Williams, you [ ], I know, have had a chance to talk to Mr. Jordan.

**WILLIAMS**: Yes.

**THE COURT**: You're satisfied with his services as your attorney in this case?

**WILLIAMS**: Yes, sir.[39]

Williams's second claim of ineffective assistance of counsel fails because he cannot meet either prong of the *Strickland* test.

## C.

In his third ineffective assistance of counsel claim, Williams again argues that Jordan should have objected to the Court's alleged non-compliance with Rule 11. This time, however, he argues that the Court failed to inform him "that all of the properties charged in the indictment and bill of particulars would be forfeited," and he alleges that he would not have pled guilty and would have proceeded to trial if he knew that all of his properties would be forfeited.[40]  Specifically, Williams argues that the plea agreement was "ambiguous" and did not provide Williams with notice that the government filed a bill of particulars.[41]  He further argues that he would have

---

[39] R. Doc. No. 164, at 15–16.
[40] R. Doc. No. 197, at 9.
[41] *Id.* at 10.

instructed Jordan to contest forfeiture had Jordan or the Court properly instructed Williams regarding forfeiture.[42]

Williams's assertion that he did not have notice of the forfeiture is without merit. First, the Court complied with Rule 11(b)(1)(J) by informing Williams, and making sure that Williams understood, that his property was subject to forfeiture:

> **THE COURT**: Finally, any and all property constituting or derived from any proceeds obtained directly or indirectly as a result of these violations, and any and all property used or intended to be used in any manner or part to commit or facilitate the commission of these violations, shall be subject to forfeiture pursuant to the applicable provisions of the United States Code.[43]
>
> . . .
>
> Mr. Williams, you understand what rights you are relinquishing or giving up by entering a plea of guilty here today?
>
> **WILLIAMS**: Yes, sir.
>
> **THE COURT**: All right. And all of the ones that I have covered with the exception of the motion to suppress issue, you understand that?
>
> **WILLIAMS**: Yes, sir.[44]

Additionally, the indictment and the plea agreement contained notices of forfeiture. The indictment contained a drug forfeiture provision as to Count 1, which stated that Williams shall forfeit:

> any and all property constituting or derived from any proceeds the defendant obtained directly or indirectly as a

---

[42] *Id.*

[43] R. Doc. No. 164, at 32.

[44] *Id.* at 40.

result of said violations and any and all property used or intended to be used in any manner or part to commit and to facilitate the commission of the violations alleged in Count 1 . . . , including but not limited to [properties listed in the indictment].[45]

The indictment also contained a gun forfeiture provision with respect to the violation charged in Count 3.[46]

Williams's plea agreement also informed him that his property was subject to forfeiture, and he agreed not to contest forfeiture:

The defendant agrees to forfeit and give to the United States prior to the date of sentencing any right, title and interest which the defendant may have in assets constituting or derived from proceeds the defendant[ ] obtained directly or indirectly as a result of the violation to which he is pleading guilty and/or which are assets used or intended to be used in any manner or part to commit and to facilitate the commission of the violation to which defendant is pleading guilty. The defendant further agrees not to contest the administrative, civil or criminal forfeiture of any such asset(s). These assets include, but are not limited to, any assets charged in the Indictment or Bill of Particulars filed by the United States. The defendant agrees that any asset charged in the Indictment or Bill of Particulars is forfeitable as proceeds of the illegal activity for which he is pleading guilty. With respect to any asset which the defendant has agreed to forfeit, the defendant waives any constitutional and statutory challenges in any manner (including direct appeal, collateral challenges of any type, habeas corpus motions or petitions, or any other means) to any forfeiture carried out in accordance with this plea agreement on any grounds, including that forfeiture constitutes an excessive fine or punishment under the Eighth Amendment to the United States Constitution.

---

[45] R. Doc. No. 1, at 4.
[46] *Id.* at 5.

Williams was aware that his assets—including but not limited to those listed in the indictment or bill of particulars—were subject to forfeiture. Williams informed the Court that he had read the indictment, that he had read the plea agreement, and that he understood what was in the plea agreement. Williams now claims that the broad forfeiture provisions to which he agreed are "ambiguous." This argument fails both prongs of *Strickland* for the reasons stated.[47]

### D.

In his fourth ineffective assistance of counsel claim, Williams argues that Jordan failed to object to the government's alleged breach of the plea agreement.[48] Specifically, Williams argues that the government breached the plea agreement by "failing to cite all relevant drug statu[t]es and offenses that Petitioner had allegedly violated in count one of the indictment."[49] Williams asserts that, had Jordan advised him that he could be held responsible for the drug offenses related to his 2003 arrest and allegedly included in his PSR as part of the conspiracy charged in count one of the indictment, he would not have pled guilty.[50]

Williams's argument is, in part, the same argument that was addressed in Williams's first claim of ineffective assistance of counsel. *See supra* Section A. As

---

[47] Additionally, a motion brought pursuant to § 2255 is not the appropriate vehicle by which Williams may challenge forfeiture of his assets. *See United States v. Banguera*, 62 F.3d 393, at *1 (5th Cir. 1995) (per curiam) ("Because Banguera is challenging only the forfeiture of assets, which does not go to the validity of his conviction or sentence, his claim is not cognizable under § 2255.").

[48] R. Doc. No. 197, at 11.

[49] *Id.*

[50] *Id.* at 41.

stated previously, the government did not breach the plea agreement by including additional drug offenses as relevant conduct in connection with the drug conspiracy charged in count one of the indictment.

Furthermore, the 2003 arrest, as well as the drug quantities seized as a result of the arrest, were included in the factual basis that Williams signed after he entered into the plea agreement.[51] The government stated in the factual basis that, at trial, it would have presented evidence of a 2003 arrest involving Williams.[52] The arrest was the result of a search that officers conducted of Williams's mother's house pursuant to a search warrant.[53] The officers discovered quantities of drugs that Williams complains were contained in the PSR.[54]

Williams admitted to the facts stated in the factual basis when he signed the factual basis, and the Court questioned Williams to make sure he had reviewed the factual basis with his attorney and understood the same:

> **THE COURT**: All right. Mr. Williams, I have also been presented here in court with a factual basis of nine pages, and it does, on the last page, bear the signatures of you and your attorney, Mr. Jordan, as well as the assistant United States attorney, Mr. Haller. You have had a chance, sir, to carefully read these nine pages --
>
> **WILLIAMS**: Yes, sir.
>
> **THE COURT**: -- before today?
>
> **WILLIAMS**: Yes, sir.

---

[51] R. Doc. No. 125, at 2.
[52] *Id.*
[53] *Id.*
[54] *See id.*; R. Doc. No. 151, at 6.

**THE COURT**: And have you had a chance to discuss what is in these nine pages with Mr. Jordan before today?

**WILLIAMS**: Yes, sir.

**THE COURT**: Do you agree that what it says in these nine pages accurately and correctly states what you did as a matter of fact?

**JORDAN**: Subject to the reservation, Your Honor.

**THE COURT**: Sure. Subject to the appeal on the motion to suppress, do you agree otherwise that these nine pages accurately state what you did?

**WILLIAMS**: Yes, sir.[55]

As discussed previously, and as the Court explained to Williams, relevant conduct and additional facts may be included in the PSR for sentencing purposes.

Nevertheless, Williams's claim fails because he cannot demonstrate that Jordan's alleged failure to advise him that the government would include his 2003 arrest in the PSR caused him prejudice. Williams cannot show prejudice because the Court specifically advised Williams that the drug quantities recovered in connection with the 2003 arrest would be disregarded and would have no impact on the calculation of his sentencing guidelines.[56] Because information from the 2003 arrest which was included in the PSR had no effect on Williams's sentence, he was not prejudiced by any alleged failure to object to its inclusion.

Williams also asserts that he would not have pled guilty if Jordan would have advised him that he would be considered a career offender if he accepted the plea

---

[55] R. Doc. No. 164, at 49–50.
[56] R. Doc. No. 187, at 14–21; *see infra* Part IV.

agreement.[57]   Again, Williams cannot show he was prejudiced by this alleged failure.

First, Williams does not dispute that he was convicted in 1992 and 1993 of possession

with the intent to distribute cocaine,[58] and he does not argue that he should not have

been considered a career offender.   Furthermore, had Williams not entered into the

plea agreement, the government would have likely filed the second bill of information

and Williams, if convicted, would have faced a mandatory life sentence.[59]   Based on

a review of the record, the Court find that Williams has not shown "that going to trial

would have given him a reasonable chance of obtaining a more favorable result."

*King*, 898 F.3d at 605 (citing *Shepherd*, 880 F.3d at 743).   Thus, his claim fails under

*Strickland*.

## E.

In his fifth claim, Williams alleges that Jordan rendered ineffective assistance

of counsel because he failed to file a pretrial motion challenging language in the

indictment.[60]   Specifically, Williams asserts that count one of the indictment was

"deficient because it failed to allege sufficient facts about the operational period of

the [c]onspiracy" and, therefore, Jordan could not have prepared a proper defense.

> The indictment or information must be a plain, concise,
> and definite written statement of the essential facts
> constituting the offense charged and must be signed by an
> attorney for the government. It need not contain a formal
> introduction or conclusion. A count may incorporate by
> reference an allegation made in another count. A count
> may allege that the means by which the defendant

---

[57] R. Doc. No. 197, at 41.

[58] *See* R. Doc. No. 151, at 8 ¶ 25; *see also* R. Doc. No. 116.

[59] *See* R. Doc. No. 127, at 2.

[60] R. Doc. No. 197, at 19.

committed the offense are unknown or that the defendant committed it by one or more specified means. For each count, the indictment or information must give the official or customary citation of the statute, rule, regulation, or other provision of law that the defendant is alleged to have violated.

Fed. R. Crim. P. 7(c)(1).

"An indictment is sufficient if it contains the elements of the charged offense, fairly informs the defendant of the charges against him, and ensures that there is no risk of multiple prosecutions for the same offense." *Lutcher*, 2009 WL 666767, at *4 (quoting *United States v. Sims Bros. Constr., Inc.*, 277 F.3d 734, 741 (5th Cir. 2001)). "An indictment that tracks a statute's words is generally sufficient 'as long as those words fully, directly, and expressly, without uncertainty or ambiguity, set forth all the elements necessary to constitute the offense intended to be punished.'" *Id.* (quoting *United States v. Arlen*, 947 F.2d 139, 145 (5th Cir. 1991) (quoting *United States v. London*, 550 F.2d 206, 2010 (5th Cir 1977))). "In other words, the language of the statute may guarantee sufficiency if all required elements are included in the statutory language." *Id.* (quoting *Arlen*, 947 F.2d at 145 (quoting *United States v. Gordon*, 780 F.2d 1165, 1171 (5th Cir. 1986))).

"To prove conspiracy under 21 U.S.C. § 846, the [G]overnment must establish that: (1) an agreement existed between two or more persons to violate federal narcotics law, (2) the defendant knew of the existence of the agreement, and (3) the defendant voluntarily participated in the conspiracy," and when "the indictment alleges a conspiracy to distribute an amount of a controlled substance that triggers enhanced penalties under 21 U.S.C. § 841(b)(1)(A), the Government must also

establish (4) the quantity of the alleged drug." *United States v. Guillen*, 610 F. App'x 408, 408 (5th Cir. 2015) (per curiam) (quoting *United States v. Daniels*, 723 F.3d 562, 570 (5th Cir. 2013)). The Fifth Circuit "has held that in the conspiracy context, '[a]n allegation as to the time of the offense is not an essential element of the offense charged in the indictment, and, within reasonable limits, the offense need only occur before the return of the indictment and within the statute of limitations.'" *United States v. Schaffer*, 582 F. App'x 468, 478 (5th Cir. 2014) (quoting *United States v. Valdez*, 453 F.3d 252, 259 (5th Cir. 2006)).

Count one of the indictment alleges that Williams, beginning on a date unknown and continuing until on or about September 22, 2014, knowingly and intentionally combined, conspired, confederated, and agreed with persons to distribute and possess with the intent to distribute one (1) or more kilograms of a mixture or substance containing a detectable amount of heroin and five (5) or more kilograms of a mixture or substance containing a detectable amount of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A), all in violation of 21 U.S.C. § 846.[61] The indictment includes the essential elements of the crime.[62] The start date of the conspiracy is not an essential element under § 846.[63]

---

[61] R. Doc. No. 1.

[62] *See also* Fifth Circuit Criminal Pattern Instruction § 2.95 (2015).

[63] Similar to the defendant in *Schaffer*, Williams's reliance on *United States v. Cecil*, 608 F.2d 1294 (9th Cir. 1979), "is misplaced." *Schaffer*, 582 F. App'x at 478 n.5. Unlike the indictment in *Cecil*, in which the "temporal language of the indictment was 'open-ended in both directions,'" *Schaffer*, 582 F. App'x at 478 n.5 (quoting *Cecil*, 608 F.2d at 1297), the conspiracy alleged in the indictment in the present matter has an end date of "until on or about September 22, 2014," R. Doc. No. 1, at 1.

Considering Williams's claim that count one of the indictment was insufficient because it did not name any of his alleged co-conspirators,[64] but only stated that Williams conspired with "persons known and unknown," the Fifth Circuit has held this language to be sufficient "so long as 'the indictment asserts that such other persons exist and the evidence supports their existence.'" *United States v. Plato*, 593 F. App'x 364, 372 (5th Cir. 2015) (quoting *United States v. Lance*, 536 F.2d 1065, 1068 (5th Cir. 1976)); *see also United States v. Thomas*, 348 F.3d 78, 83–84 (5th Cir. 2003) (holding that the indictment was sufficient "because the involvement of another person acting in concert with [the defendant] is implicit in the use of the words 'combine, conspire, and confederate'" as stated in the indictment, and the evidence at trial showed that the defendant conspired with another person).

According to the factual basis, the government would have produced witnesses at trial that would have testified that they trafficked drugs with Williams "on and off for many years."[65] "These witnesses would have described purchases of large quantities of heroin and cocaine that they made from Williams beginning in the early 2000's and continuing through the time of Williams's arrest in September 2014," and they would have "testif[ied] that Williams primarily trafficked in marijuana and cocaine until sometime after 2010."[66] The government stated that it also would have presented evidence of text messages from identifiable persons and would have presented testimony that those persons were drug customers of Williams who

---

[64] R. Doc. No. 209, at 9.
[65] R. Doc. No. 125, at 2.
[66] *Id.*

communicated with Williams about drug purchases via text messaging.[67] Williams does not dispute the same.

The indictment, therefore, was legally sufficient, and Jordan did not render ineffective assistance by failing to file a meritless motion challenging the indictment. Williams's fifth ineffective assistance of counsel claim does not meet either prong of the *Strickland* test and it fails.

## F.

In his sixth claim of ineffective assistance of counsel, Williams alleges that Jordan failed to adequately investigate the facts and law related to count one of the indictment.[68] Williams seems to assume that Jordan did not conduct an adequate investigation because the indictment did not contain (1) the start date of the conspiracy or (2) all of the alleged drug offenses for which Williams would be held accountable.

"In evaluating attorneys' judgment as to whether to pursue evidence, courts must consider 'whether the known evidence would lead a reasonable attorney to investigate further.'" *United States v. Broussard*, No. 11-108, 2013 WL 1828023, at *5 (W.D. La. Apr. 29, 2013) (quoting *Wiggins v. Smith*, 539 U.S. 510, 527 (2003)). "In any effectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Wiggins*, 539 U.S. at 521–22 (quoting *Strickland*,

---

[67] *Id.* at 4.
[68] R. Doc. No. 197, at 20.

466 U.S. at 690–91). "A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." *United States v. Green*, 882 F.3d 999, 1003 (5th Cir. 1989).

Williams again alleges that he would not have pled guilty had he known that Jordan did not fully investigate the charges against him, but Williams does not allege what evidence, if any, further investigation would have produced. Other than his broad and conclusory allegation that he would not have pled guilty had he known that Jordan did not conduct a full investigation, Williams does not allege what evidence Jordan could have or should have discovered with further investigation and whether any such evidence would have altered the outcome of his trial or the government's case against him.

Additionally, the Court specifically questioned Jordan and Williams at the rearraignment proceeding as to the adequacy of Jordan's investigation:

> **THE COURT**: . . . Mr. Jordan, you've had a chance to explain the charges to your client in this case?
>
> **JORDAN**: Yes, I have, Your Honor.
>
> **THE COURT**: You've had a full opportunity to investigate the facts and the law applicable to this case, as well as any possible defenses that Mr. Williams may have, and to advise and counsel him accordingly, both with regard to the motion to suppress as well as his guilty plea here today?
>
> **JORDAN**: Yes, I have had that opportunity, and I've taken advantage of it.
>
> **THE COURT**: Okay. And you're satisfied that he is here today pleading guilty, subject to the reservation with

> regard to the appeal, voluntarily, and with full knowledge of the consequences otherwise of his plea here today as to Counts 1 and 3?
>
> **JORDAN**: Yes, I am, Your Honor.
>
> **THE COURT**: Have you made any representations to Mr. Williams as to what sentence he will receive in this case other than to discuss the statutory provisions or the guidelines that might apply?
>
> **JORDAN**: No, I have not made any other representations, Your Honor.
>
> **THE COURT**: Mr. Williams, have you got any questions or comments about anything I've just asked Mr. Jordan or any of his responses?[69]

Williams only asked the Court whether his plea agreement adversely affected his wife and co-defendant,[70] but he did not dispute or challenge whether Jordan had adequately investigated the charges against him. Williams's claim for relief is meritless, as it cannot meet either prong of the *Strickland* test.

### G.

Williams's seventh ineffective assistance of counsel claim fails for essentially the same reasons as stated in Section F, *supra*. Williams alleges that Jordan did not adequately investigate the facts underlying count one of the indictment, that Jordan learned of the information relating to Williams's 2003 arrest when he read the factual basis, and that Jordan should have discovered inconsistencies in the indictment and

---

[69] R. Doc. No. 164, at 51–52.
[70] *Id.* at 52.

the factual basis (i.e., the marijuana that was not mentioned in the indictment).[71] Williams alleges that he and Jordan discussed the "false and misleading" information in the factual basis, but that Jordan advised Williams that the information "would not have an [e]ffect on the charges that [he] was pleading to."[72] Williams asserts that he would not have pled guilty had he known that the "misleading facts in th[e] factual basis would have affected the charges" to which he was pleading guilty.[73]

Although Williams alleges that the factual basis was false and misleading as it relates to the 2003 arrest, he signed the factual basis, stated that the information in the factual basis was accurate and correct, and informed the Court under oath that he did the acts described therein.[74] To the extent that the facts related to the 2003 arrest as described in the factual basis were false and misleading, Williams cannot

---

[71] R. Doc. No. 197, at 21–22. Any claim by Williams that Jordan was unaware of and should have discovered the information regarding his 2003 arrest ahead of reviewing the factual basis is without merit. At the first evidentiary hearing concerning Williams's first motion to suppress, Jordan objected when the government elicited testimony from a probation officer as to Williams's 2003 arrest. R. Doc. No. 49, at 20–22. Jordan's objection was overruled because the Court found the information relevant. *Id.*

[72] R. Doc. No. 197, at 43.

[73] *Id.*

[74] R. Doc. No. 125; R. Doc. No. 164, at 49–50. Williams argues that the factual basis stated that the 2003 arrest and the 2012 conviction would be used as extrinsic evidence pursuant to Rule 404(b) of the Federal Rules of Criminal Procedure. R. Doc. No. 197, at 21. Regardless of how such information would have been introduced at trial, Williams stated that the information in the factual basis was accurate and correct.

Williams also argues that the factual basis is "defective[ ] because it contains conduct that was not found by the grand jury." R. Doc. No. 209, at 15. Williams, however, does not provide any information with respect to what evidence the grand jury considered, and the Court cannot speculate as to the same.

demonstrate that he was prejudiced by this information or Jordan's alleged failure to remove it from the factual basis because the Court did not consider those facts when imposing Williams's sentence. *See supra* Section D. Because he cannot meet the second prong of *Strickland*, Williams's seventh claim of ineffective assistance of counsel fails.

## H.

In his eighth claim of ineffective assistance of counsel, Williams again challenges the inclusion of the 2003 arrest in his factual basis and PSR and argues that counsel should have filed a motion to suppress the evidence. Once again, the 2003 arrest did not have an effect in the Court's determination of Williams's sentence.

Even if Jordan should have filed a motion to suppress such evidence, which this Court is not suggesting, Williams cannot demonstrate that he was prejudiced by Jordan's alleged failure. Williams does not allege, and the factual basis does not support a finding that, absent the 2003 arrest, the government had insufficient evidence to find him guilty of the conspiracy charged in count one. Specifically, he does not challenge the fact that witnesses would have testified at trial that they distributed drugs with Williams and arranged for drug purchases via text messaging. As previously stated, the facts related to the 2003 arrest did not have an effect on Williams's sentence, Williams cannot establish either prong of the *Strickland* test, and his eighth ineffective assistance of counsel claim fails.

# I.

Williams's ninth ineffective assistance of counsel claim is similarly meritless. Williams alleges that Jordan should have challenged his 2003 arrest on statute of limitations grounds.[75] Title 18, United States Code, Section 3282 states that "no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed." "[A]n indictment satisfies the requirements of the statute of limitations if the government alleges and proves . . . that the conspiracy continued into the limitations period." *United States v. Lopez*, 749 F. App'x 273, 276 (5th Cir. 2018) (quoting *United States v. Lokey*, 945 F.2d 825, 832 (5th Cir. 1991)).

Williams asserts that the statute of limitations with respect to the offense that resulted in his August 5, 2003 arrest prescribed on August 5, 2008. However, Williams was indicted for a drug conspiracy that the government alleged began on an unknown date and continued "until on or about September 22, 2014."[76] Williams was indicted in January 2015, which was within five years of the end date of the conspiracy alleged in the indictment.

The indictment did not arise only from the events surrounding Williams's 2003 arrest; notably, Williams's 2003 arrest is not mentioned in the indictment. Rather, the government stated in the factual basis that the conduct which related to the 2003 arrest was part of the ongoing conspiracy to distribute and possess with the intent to

---

[75] R. Doc. No. 197, at 25.
[76] R. Doc. No. 1.

distribute certain controlled substances. Any objection as to the statute of limitations related to the 2003 arrest would have been meritless, and Jordan was not ineffective for failing to urge a meritless motion. Williams's ninth claim of ineffective assistance of counsel fails under the first prong of *Strickland*.

## J.

In his tenth claim of ineffective assistance of counsel, Williams claims that Jordan failed to adequately investigate exculpatory evidence, namely a surveillance video, per Williams's request.[77] On September 22, 2014, Louisiana Probation Officer Patrick Green ("Officer Green"), as well as Drug Enforcement Administration ("DEA") task force members and other law enforcement officers, conducted a search of Williams's place of business, Boss Used Cars.[78] At the time, Williams was on active probation and he was being supervised by Officer Green as a result of his 2012 conviction for possession with intent to distribute a controlled dangerous substance in the 18th Judicial District Court in Iberville Parish.[79]

On the morning of September 22, 2014, DEA task force members alerted Officer Green that they had information that Williams was a multi-kilogram cocaine dealer.[80] With that information, Officer Green decided to conduct a compliance check, and he and the other officers met Williams at his business.[81] Officer Green conducted a pat-down of Williams's person and seized approximately $10,000 in cash in varying

---

[77] R. Doc. No. 197, at 27.
[78] R. Doc. No. 125, at 2–3.
[79] *Id.* at 3.
[80] *Id.* at 2–3.
[81] *Id.* at 3.

denominations and in various pockets on his body.[82] Thereafter, the officers went to Williams's residence where they found approximately $425,000 in cash and a weapon.[83]

Jordan filed a motion to suppress the evidence that resulted from the search of Williams's business, arguing that Officer Green and the other officers did not have probable cause or reasonable suspicion to conduct the search of Williams's business without a warrant.[84] After an evidentiary hearing, in which Officer Green testified, the Court denied the motion.[85] Jordan filed a second motion to suppress the evidence, which the Court construed as a motion to reconsider Williams's first motion to suppress because the motion essentially re-urged the arguments made in the first motion.[86] The Court denied the second motion for essentially the same reasons that it denied the first motion.[87]

Jordan successfully moved to reopen the second motion to suppress, requesting a second evidentiary hearing based on discovery of new *Giglio* material that allegedly "reflect[ed] upon the truthfulness of" Officer Green in connection with his testimony at the first evidentiary hearing.[88] The *Giglio* material was related to a disciplinary proceeding and sanctions imposed on Officer Green by his employer, the Louisiana Department of Corrections, Division of Probation and Parole, for allegedly violating

---

[82] *Id.* at 3; R. Doc. No. 49, at 35–36.
[83] R. Doc. No. 125, at 3.
[84] R. Doc. No. 26.
[85] R. Doc. Nos. 47, 49.
[86] R. Doc. No. 71; *See* U.S.C.A. No. 17-30198, R. Doc. No. 514348266, at 4–5.
[87] R. Doc. No. 73.
[88] R. Doc. No. 85-1, at 1.

the department's policies, including making a false statement.[89]  The Court conducted a second evidentiary hearing, allowing the parties to examine Officer Green.[90]

At the close of the second evidentiary hearing, Williams and Jordan sought to introduce for the first time the aforementioned surveillance video.[91]  The Court ordered Jordan to produce the video to the government, and it advised the parties that they could file motions regarding the admissibility of the video.[92]  The parties later entered into a stipulation as to the contents of the video, which was filed into the record.[93]

After the second evidentiary hearing, the Court took the motion to suppress under advisement, allowing counsel for both parties to file post-hearing memoranda.[94]  After "carefully review[ing]" the post-hearing memoranda, the video surveillance from Williams's business, and the accompanying stipulation, the Court again denied the motion to suppress as well as Williams's request to personally examine Officer Green at a third evidentiary hearing.[95]

Williams now argues that Jordan rendered ineffective assistance of counsel by deviating from their agreed-upon strategy at the evidentiary hearing and refusing to introduce the surveillance video into evidence.[96]  Regardless of whether Jordan

---

[89] R. Doc. No. 181.
[90] *Id.*
[91] *Id.* at 96.
[92] R. Doc. No. 100, at 2; R. Doc. No. 181, at 99.
[93] R. Doc. Nos. 106, 113.
[94] R. Doc. No. 100.
[95] R. Doc. No. 114.
[96] R. Doc. No. 197, at 26–27.

initially refused or neglected to introduce the video, the evidence was eventually introduced at the hearing, the parties thereafter stipulated to its authenticity, and the Court considered the video before it again denied the motion to suppress.[97] Therefore, Williams's claim that Jordan failed to produce allegedly exculpatory evidence is without merit.

Williams also argues that Jordan was ineffective for failing to oppose the government's motion *in limine* to preclude the defense from rearguing the suppression issue at trial.[98]  According to Williams, the government's motion *in limine* demonstrates that Jordan revealed part of the defense's trial strategy and assisted the government because it knew that Williams's was going to urge the suppression issue once again.[99]

The motion *in limine* was filed after the Court denied Williams's first and second motions to suppress.[100]  The Court considered and denied the same suppression argument from Williams on three separate occasions.  Williams cannot demonstrate that he was prejudiced by Jordan's failure to file an opposition to the motion *in limine* because Williams cannot show that the Court would have ruled differently after hearing the arguments for a fourth time.[101]  Because Williams cannot

---

[97] R. Doc. No. 100; R. Doc. No. 181, at 95–96.
[98] R. Doc. No. 197, at 26–27; *see* R. Doc. No. 75.
[99] R. Doc. No. 197, at 47.
[100] R. Doc. Nos. 100, 115.
[101] Pursuant to his plea agreement, Williams reserved the right to appeal the Court's denial of his motion to suppress, which the Fifth Circuit denied on appeal. R. Doc. No. 194.

demonstrate prejudice or deficient performance by counsel as required by *Strickland,* Williams's tenth claim of ineffective assistance of counsel fails.

## K.

In his eleventh claim of ineffective assistance of counsel, Williams argues that Thompson-Hicks, his counsel at sentencing, failed to adequately investigate the PSR and file appropriate objections.[102]  Specifically, he argues that Thompson-Hicks should have objected to the inclusion of the drug quantities from his 2003 arrest and 2012 conviction as part of the conspiracy.[103]

As explained in Section D, *supra*, the Court specifically advised Williams at sentencing that the drug quantities related to his 2003 arrest and 2012 conviction were not considered at sentencing because they did not impact his guideline calculation, which was ultimately driven by his status as a career offender.[104]  After the Court informed Williams that it would disregard the alleged inaccurate information, Williams and his counsel had no further objections to the PSR.[105]

Because Williams cannot demonstrate that an objection to the PSR by Thompson-Hicks would have had any effect on Williams's sentence, he cannot demonstrate that he was prejudiced by his counsel's failure to object.  Furthermore, counsel is not ineffective for failing to raise a meritless objection.  Williams's claim of ineffective assistance of counsel fails under either prong of *Strickland.*

---

[102] R. Doc. No. 197, at 28–29.
[103] *Id.*
[104] R. Doc. No. 187, at 20; *see infra* Part IV.
[105] R. Doc. No. 187, at 21–22.

**L.**

In his twelfth claim of ineffective assistance of counsel, Williams asserts that Thompson-Hicks failed to conduct an adequate investigation before filing a motion to withdraw Williams's guilty plea.[106] Williams makes the conclusory argument that because the motion to withdraw was filed on November 20, 2016, and the rearraignment transcript was not filed into the record until December 6, 2016, Thompson-Hicks did not review the rearraignment transcript and, therefore, did not conduct an adequate investigation. He asserts that the rearraignment transcript would have revealed the errors Williams alleges in his first, second, and third claims as argued in the present motion. *See supra* Sections A–C. Williams further asserts that Thompson-Hicks should have discovered the errors Williams alleges in his fourth, fifth, sixth, and seventh claims for relief in connection with the PSR, factual basis, plea agreement, and indictment. *See supra* Sections D–G.

Williams also alleges that Thompson-Hicks falsely asserted, in the motion to withdraw Williams's guilty plea, that transcripts of Williams's court proceedings in Orleans Parish Criminal District Court following his 2003 arrest, were lost in Hurricane Katrina.[107] Williams alleges that Thompson-Hicks's statements were false as Williams made multiple court appearances in 2006 following Hurricane Katrina.[108]

---

[106] R. Doc. No. 197, at 30; *see* R. Doc. No. 157.
[107] R. Doc. No. 157-1, at 2 n.1.
[108] R. Doc. No. 197, at 31.

The Court, having found no merit to Williams's first seven claims for relief, finds that Williams cannot demonstrate that he was prejudiced by Thompson-Hicks's alleged failure to discover the same purported errors. Again, counsel is not ineffective for failing to raise meritless objections or motions.

Furthermore, beyond his conclusory allegations and references to other claims for relief, Williams has not specified what Thompson-Hicks would have discovered during his investigation or what the alleged transcripts would have demonstrated in support of the motion to withdraw Williams's guilty plea. "A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the [proceeding]." *Nelson v. Hargett*, 989 F.2d 847, 850 (5th Cir. 1993) (quoting *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989)). "Bare allegations do not suffice." *Id.* Williams's twelfth claim fails under *Strickland*.

## M.

In his thirteenth claim of ineffective assistance of counsel, Williams asserts that Phleger failed to raise all preserved claims on appeal.[109] Specifically, Williams argues that Phleger should have included evidence shown in the surveillance footage in her argument on appeal.

"The performance of [Williams's] appellate counsel is evaluated under the same *Strickland* standard as is trial counsel's performance." *United States v. Coriolant*, No. 11-241, 2017 WL 2935781, at *3 (E.D. La. July 10, 2017) (Africk, J.)

---

[109] R. Doc. No. 197, at 32.

(internal quotations omitted). "In this context, 'effective assistance of counsel does not mean counsel who will raise every nonfrivolous ground of appeal available,' but '[r]ather, it means . . . counsel performing in a reasonably effective manner.'" *Id.* (quoting *Green v. Johnson*, 160 F.3d 1029, 1043 (5th Cir. 1998)). "To prove prejudice from [appellate counsel's] deficient performance, [Williams] must demonstrate that 'there is a reasonable probability that, but for counsel's unprofessional error[ ], the result of the proceeding would have been different.'" *Williamson*, 183 F.3d at 463 (quoting *Jones v. Jones*, 163 F.3d 285, 302 (5th Cir. 1998)) (alterations in original in part). "[A]ppellate '[c]ounsel is not deficient for, and prejudice does not issue from, failure to raise a legally meritless claim.'" *Id.* (quoting *Smith v. Puckett*, 907 F.2d 581, 585 n.6 (5th Cir. 1990)).

Williams's claim is meritless, considering Phleger specifically analyzed the surveillance video in her appellate brief to demonstrate to the Fifth Circuit the alleged illegality of the officers' search of Williams and his business.[110] Furthermore, absent from Williams's motion is what effect, if any, his proposed arguments would have had on the Fifth Circuit's judgment. Williams simply alleges that "[h]ad counsel combined the information revealed by the surveillance video, with the argument prior [c]ounsel raised in the second motion to suppress evidence," his "chance of receiving a more favorable ruling on direct appeal would have been greatly improved."[111] The Court disagrees.

---

[110] U.S.C.A. No. 17-30198, R. Doc. No. 514113573, at 17–20.
[111] R. Doc. No. 197, at 33.

"Mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue." *Green*, 160 F.3d at 1043. For reasons previously discussed, Williams has not demonstrated that he was in any way prejudiced by his counsel's alleged deficient performance on direct appeal, and his complaint fails both prongs of *Strickland*.

## N.

In his fourteenth claim of ineffective assistance of counsel, Williams asserts that Phleger failed to raise on appeal that the district court failed to conduct a proper Rule 11 plea colloquy.[112] The Court, having already found that Judge Engelhardt conducted a proper plea colloquy, *see supra* Sections A–C, finds this additional argument meritless for substantially the same reasons. Phleger was not ineffective for failing to raise meritless arguments on appeal.

## O.

In his fifteenth claim of ineffective assistance of counsel, Williams argues that Jordan failed to advise him that a bill of particulars and a notice of lis pendens had been filed, and he alleges that he would not have pled guilty had he known that his business was subject to forfeiture. In order to satisfy the prejudice prong of the *Strickland* test, Williams must show a reasonable probability that, but for Jordan's failure to advise Williams of the bill of particulars and the notice of lis pendens, and to advise him that his business was subject to forfeiture, that he would not have pled guilty and that he would have insisted on going to trial. *See King*, *supra*, 898 F.3d at

---

[112] *Id.* at 34.

605. Williams must show that going to trial would have given him a reasonable chance of obtaining a more favorable result. *Id.*

Williams's conclusory allegation that he would not have pled guilty had he known his business could be forfeited is unconvincing and insufficient to satisfy *Strickland*'s prejudice prong. Williams agreed that the facts stated in the nine-page factual basis were accurate and correct.[113] As part of the factual basis, the government demonstrated that Williams's used car business was used as a "front business to launder his drug proceeds."[114] Williams agreed as part of his plea agreement to forfeit any rights he "may have in assets constituting or derived from proceeds the defendants obtained directly or indirectly as a result of the violation to which he is pleading guilty . . . ."[115] Williams's claim is essentially a re-argument of his third claim of ineffective assistance of counsel. *See supra* Section C. For substantially the same reasons, Williams's fifteenth claim for ineffective assistance of counsel fails under *Strickland*.

## P.

In his sixteenth claim of ineffective assistance of counsel, Williams asserts that Jordan should have objected to the Court's failure to comply with Rule 11(b)(3), which requires the district court to determine that there is a factual basis for the plea.[116] At Williams's rearraignment, the Court specifically questioned Williams about his

---

[113] R. Doc. No. 164, at 50; *see* R. Doc. No. 125.
[114] R. Doc. No. 204, at 24; R. Doc. No. 125, at 5.
[115] R. Doc. No. 127, at 5.
[116] R. Doc. No. 197, at 38.

understanding of the factual basis and confirmed that Williams reviewed the factual basis with his counsel.[117] *See supra* Section D.  Williams advised the Court that he had read the factual basis and that he did the acts alleged therein.[118]  Williams stated that the factual basis was accurate and correct.[119]

Williams now alleges that it was improper for the Court to rely on Williams's responses indicating that he understood the factual basis.[120]  According to Williams, there was a discrepancy between the factual basis and the PSR regarding his 2003 arrest, 2012 conviction, and the conspiracy count.[121]  Williams also alleges that he was not advised that "pleading guilty subject to [the] reservation did not protect him from the false and misleading information about [Williams's] 2003 arrest in the factual basis" and that Jordan did not advise him that such information would affect the charges to which he was pleading guilty.[122]

Regarding the alleged discrepancy between the factual basis and the PSR, the Court could not have advised Williams at the time of his plea exactly what would be included in the PSR, as the PSR was only made available to the Court after Williams pled guilty.  Williams seems to claim that the factual basis states that his 2003 arrest and 2012 conviction would be introduced as Rule 404(b) evidence[123] whereas the PSR lists his 2003 arrest and 2012 conviction as evidence of the conspiracy charged in

---

[117] R. Doc. No. 164, at 49–50.
[118] *Id.* at 50.
[119] *Id.*
[120] R. Doc. No. 197, at 38.
[121] *Id*.
[122] *Id*.
[123] Fed. R. Crim. P. 404(b).

count one.[124]  However, Williams does not provide support for his contention that it was improper for such information to be included in his PSR, regardless of how it would have been introduced at trial.

Regarding Williams's allegation that he was unaware that pleading guilty "subject to the reservation" did not protect him from the false and misleading information related to the 2003 arrest as described in the factual basis, the Court finds this argument meritless for the reasons stated.  Williams's contention that neither Jordan nor the Court explained what was meant by "subject to the reservation" is similarly meritless,[125] as the Court made clear during the rearraignment proceeding that the "reservation" referred to Williams's right to appeal Judge Engelhardt's adverse decision in connection with Williams's motion to suppress:

> **THE COURT**: All right. Except with regard to Mr. Williams'[s] reservation of his right to appeal this Court's ruling on his motion to suppress on which his guilty plea would be conditioned, if you plead guilty and I accept your plea[ ] here this morning, do [ ] you [ ] understand that you will waive your right to a trial, and all the other rights that I've just discussed as well, and there will not be a trial in this case? The Court will simply enter a judgment of guilty as to the counts that we covered here this morning that I've already mentioned. The Court will then proceed to determine what your sentence will be based upon the guilty pleas. . . . Mr. Williams, do you understand?
>
> **WILLIAMS**: Yes, sir.
>
> **THE COURT**: If you were tried by a jury and found guilty, you would have the right to appeal your conviction. By

---

[124] R. Doc. No. 197, at 38.
[125] *Id.*

pleading guilty, however, you waive your right to appeal the conviction to the extent those rights can be waived. That is, with the exception, again, of Mr. Williams'[s] limited reservation of his right to appeal with regard to the motion to suppress. Do [ ] you understand this? . . . Mr. Williams?

**WILLIAMS**: Yes, sir.

. . .

**THE COURT**: By pleading guilty you also waive the right to appeal your conviction and your sentence, as well as any rulings on any pretrial motions, except for, as mentioned, the motion to suppress, on any waivable ground, including, but not limited to, any appeal rights conferred under Section 1291 of Title 28 and Section 3742 of Title 18, except under some very limited circumstances. Specifically, again with the exception of Mr. Williams'[ ] reservation of the right to appeal, . . . you will only be able to appeal any punishment that the Court would impose that would exceed the statutory maximum. Do [ ] you understand the extent to which you waive your right to appeal? . . . Mr. Williams?

**WILLIAMS**: Yes, sir.[126]

. . .

**THE COURT**: All right. Mr. Williams, did you, in fact, do the acts charged in Counts 1 and 3 of the indictment filed against you?

**JORDAN**: Yes, subject to the –

**THE COURT**: To the reservation regarding the motion to suppress?

**JORDAN**: Yes, Your Honor.

**THE COURT**: Certainly. And the entirety of today's proceeding is subject to that reservation, just to be clear on

---

[126] R. Doc. No. 164, at 18–20.

the record. Mr. Jordan is correct. Mr. Williams, did you, in fact, again subject to the reservation, do the acts charged in Counts 1 and 3 of the indictment?

**WILLIAMS**: Yes, sir.[127]

. . .

**THE COURT**: All right. Mr. Williams, I have also been presented here in court with a factual basis of nine pages, and it does, on the last page, bear the signatures of you and your attorney, Mr. Jordan, as well as the assistant United States attorney, Mr. Haller. You have had a chance, sir, to carefully read these nine pages –

**WILLIAMS**: Yes, sir.

**THE COURT**: -- before today?

**WILLIAMS**: Yes, sir.

**THE COURT**: And have you had a chance to discuss what is in these nine pages with Mr. Jordan before today?

**WILLIAMS**: Yes, sir.

**THE COURT**: Do you agree that what it says in these nine pages accurately and correctly states what you did as a matter of fact?

**JORDAN**: Subject to the reservation, Your Honor.

**THE COURT**: Sure. Subject to the appeal on the motion to suppress, do you agree otherwise that these nine pages accurately state what you did?

**WILLIAMS**: Yes, sir.[128]

---

[127] *Id.* at 30
[128] *Id.* at 50–51.

The Court did not make any reference to the 2003 arrest in connection with Williams's reservation of his right to appeal as a condition of his plea. Williams does not allege that he was advised by Jordan that the information related to the 2003 arrest was subject to appeal.

Contrary to Williams's allegations, the Court specifically found there to be a basis in fact for the plea that contained all of the elements of the crimes charged.[129] There was no need for Jordan to object to a perfectly proper advisement of his rights and review of the factual basis by the district judge. Williams's claim is without merit as Williams has not demonstrated a violation of either *Strickland* prong.

## IV.

Williams made an additional argument as to his sentencing in a memorandum in support of his motion.[130] Williams argues that the Court violated Federal Rule of Criminal Procedure 32(c)(3)(D) at his sentencing hearing because the Court did not "append a record of its findings and determinations to any copy of the PSR made available to the [B]ureau of [P]risons."[131] The Court notes that Williams likely intended to argue that the Court violated current Rule 32(i)(3), which provides:

> At sentencing, the Court:
>
> (A) may accept any undisputed portion of the presentence report as a finding of fact;
>
> (B) must—for any disputed portion of the presentence report or other controverted matter—rule on the

---

[129] *Id.* at 58.
[130] R. Doc. No. 200. The government did not respond to such claims in Williams's memorandum in support of his motion.
[131] *Id.* at 1.

> dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing; and
>
> (C) must append a copy of the court's determinations under this rule to any copy of the presentence report made available to the Bureau of Prisons.[132]

Williams alleges that the Court's consideration of Williams's oral objection to the PSR at sentencing should have been appended to the PSR.[133]

Apart from the argument that Williams may have waived this claim as a result of the plea agreement, Williams's claim is not one of constitutional error and, therefore, it is not cognizable under § 2255. "A claim of error that is neither

---

[132] Rule 32(c)(3)(D) was in effect from 1983 to 2002. *See* Fed. R. Crim. P. 32, advisory committee's note to 1983 & 2002 amendments. The Criminal Rules were restyled in 2002, and current Rule 32(i)(3) incorporates former rule 32(c)(3)(D). *Id.*; *United States v. Valdes*, 688 F. App'x 739, 742 n.2 (11th Cir. 2017). The former Rule 32(c)(3)(D) provided:

> If the comments of the defendant and the defendant's counsel or testimony or other information introduced by them allege any factual inaccuracy in the presentence investigation report or the summary of the report or part thereof, the court shall, as to each matter controverted, make (i) a finding as to the allegation, or (ii) a determination that no such finding is necessary because the matter controverted will not be taken into account in sentencing. A written record of such findings and determinations shall be appended to and accompany any copy of the presentence investigation report thereafter made available to the Bureau of Prisons or the Parole Commission.

*United States v. Smith*, 844 F.2d 203, 206 (5th Cir. 1988) (quoting former Rule 32(c)(3)(D)). The Court, therefore, construes Williams's challenge as a challenge to the Court's compliance with Rule 32(i)(3)(C).

[133] *See* R. Doc. No. 200.

constitutional nor jurisdictional is not cognizable in a Section 2255 proceeding unless the error constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *United States v. Allen*, No. 12-138, 2018 WL 5251906, at *1 (E.D. La. Oct. 22, 2018) (Vance, J.) (quoting *United States v. Addonzio*, 422 U.S. 178, 185 (1979) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962))); *Williamson*, 183 F.3d at 462 ("Section 2255 motions may raise only constitutional errors and other injuries that could not have been addressed on direct appeal that will result in a miscarriage of justice if left unaddressed.").[134]

Nothing in the record reflects that Williams brought this claim on appeal or that he previously filed a motion to correct his sentence. Furthermore, Williams does not argue that he was unable to bring this issue on direct appeal. Even if the Court failed to comply with Rule 32(i)(3)(C) by failing to append its determination to the PSR, a finding this Court does not make, Williams's claim does not allege a constitutional error and, therefore, it cannot be urged pursuant to § 2255.

## **CONCLUSION**

For the foregoing reasons,

---

[134] In *United States v. Smith*, the Court held that a violation of former Rule 32(c)(3)(D) was not a constitutional issue and that the defendant's failure to raise the alleged violation on direct appeal or on a Rule 35 motion to correct his sentence removed the claim from "the narrow ambit of § 2255 review." 844 F.2d at 206; *see supra* note 132.

**IT IS ORDERED** that Williams's motion to vacate, set aside, or correct his sentence is **DENIED** and his 28 U.S.C. § 2255 motion is **DISMISSED WITH PREJUDICE.**

New Orleans, Louisiana, May 29, 2019.

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**